And for the appellant, Ms. Marshall, you may proceed. Thank you, Your Honor. May it please the Court, my name is Samantha Marshall, I am counsel for appellant Kelvion, Inc. With the Court's permission, I would like to reserve five minutes for rebuttal. What we have here is PetroChina having its cake and eating it too. The District Court erred when it glossed over the plain language of the Form Selection Clause and read language into the clause that does not exist. Had the District performed the necessary analysis correctly, it would have concluded that the District Court's decision is unjust as it permits PetroChina to use the purchase order as both a sword and a shield. Kelvion is here today to ask this Honorable Court to reverse the District Court's order finding a Form Selection Clause warrant to dismissal and to remand this case to the District Court to conduct a full form non-convenience analysis. Why wouldn't the shipping costs be inextricably intertwined with the terms of the purchase order contract? Yes, sir. It just seems like you've got to get the product to the customer and that's part of the deal, part of the contract. Why isn't that the more reasonable interpretation? Because, Your Honor, these were something more than shipping costs. The parties had not contemplated this anywhere in the contract. The purchase order actually had a shipping schedule. PetroChina came after the purchase order was executed, asked for the shipping to be delayed. They were advised that there were certain circumstances that could arise that may affect, went ahead and directed that shipping be done. The shipping certainly is part of the contract, but these costs are things like cranes and police escorts and things of that nature that are actually rather extraordinary under the circumstances. Before the product was shipped, what was the arrangement? Who was to pay for shipping and how much was that price? Yes, sir. Under the purchase order, it would be PetroChina that would actually put the bill for the shipping. They received a budgeted price, an estimate, if you will, that was going to be confirmed at the time of shipping. Pursuant to the purchase order and then the change orders, that incorporated all the terms of the purchase order. These costs, these exigent costs, arose after all of that. The exchanges were actually mid-transit when frost laws went into effect and impacted routes that had to be taken and, again, these special measures that needed to be made. Does the purchase order then tell us how those would be allocated between PetroChina and Kelvion? They do not. They do not. If you examine the purchase order carefully, there is no provision that actually speaks to these exigent costs at all. Now, PetroChina has attempted to bring this under the umbrella of the purchase order by pointing the court to the term in the contract that says that Kelvion will bear the risk of loss. Kelvion doesn't dispute that it would have borne the risk of loss, but it does dispute the characterization of loss. There was no loss. The exchangers were not damaged. They were not destroyed. Nothing about the exchangers themselves were affected. Simply, there were exigent costs that were incurred. Well, that to me sounds like a contract interpretation issue that the forum selection clause would point to Alberta, Canada, doesn't it? Your Honor, I definitely understand that perspective, but the plain language of the agreement represented by quite a bit of case law, if you look at the actual plain language of the forum selection clause, it is very, very narrow. It simply says that this purchase order, this purchase order is a defined term, and the courts have distinguished forum selection clauses and arbitration clauses that read in such a manner from those that have language such as relating to or arising under even, which is more narrowly construed than the broad language of relating to. This purchase order shall be governed by and construed in accordance with the laws of the province of Alberta, and the parties agree to accept and submit to the exclusive jurisdiction of the courts of the province of Alberta. Yes, sir. So if the three of us think that shipping is a part of the purchase order, the case goes to Canada? That's correct, sir. So for you to prevail then, what's the interpretation that allows the three of us to rule in your favor? The interpretation that would allow this court to rule in Kelvion's favor is simply by looking at the language, the clause that you just read, Your Honor, and determining that it is so narrowly drawn that it could not, in fact, encompass costs that were incurred after the close of the contract. There is nothing in this contract to present Kelvion's case in chief that needs to be litigated. In fact, there could be an agreement as to the fact that, sir, there were exchangers purchased, but beyond that, we don't have to look at the contract at all to put on our case in chief. All we need to do is demonstrate that these costs were incurred, that they were there for the benefit of PetroChina, and that we paid them, and that we're entitled to them back. Now, I understand from the record there were four change orders? Yes, sir. If there was a dispute as to those, would those be governed by Canadian law? Yes, those would be because they incorporated the terms of the purchase order. However, there was never a change order for this amount. That's because the costs were incurred at the end of the shipping period. Correct. So you used the term budgeted shipping costs a few minutes ago. Does the purchase order use the term budgeted shipping costs? Your Honor, I believe I misspoke. I believe it says that it's an estimate that will be confirmed. So, and that is, I failed to be able to point you to the exact provision, but it is where it is the cost of goods is defined, and then it speaks of shipping that follows that, and it is an estimate that is provided. And PetroChina has, in its briefing, made a point that they rely upon this provision to say that we would foot the bill for all of the shipping because the shipping is a fixed cost, but that's actually not what the contract says. The contract says that the goods are of a fixed cost, and that, again, the shipping is an estimate. But regardless, these, again, were exigent costs that were incurred after the fact for which no purchase order, no change order has been entered into for. If you look at the purchase order and the change orders, you will find nowhere in there these costs that are referenced, memorialized, incorporated therein. They just don't exist. I guess my problem is that I'm looking at them as part of the shipping costs, even though they may not have been contemplated, and I think we all agree that the change orders, if they don't specifically change a term, we go back to the contract, and the forum selection clause remains valid. So... That's absolutely correct. And in this case, actually, every change order said and incorporated all of the provisions from the purchase order, but here there was no change order. And just to direct you back quickly to the actual language of the forum selection clause, PetroChina points you in a direction, it points out in its briefing that the arbitration clause that is in the purchase order that PetroChina prepared actually uses a broad term. It says, concerning this purchase order. It certainly could have done the same thing with respect to the forum selection clause, but it did not. And the district court was not at liberty to redraft that clause. And in my reading of the order, at least, in my humble opinion, is that the court either did not do the proper contract interpretation analysis or interpreted it incorrectly under the case law. You also said that when PetroChina wanted to change the delivery dates, something to the effect that they were warned that that could affect shipping costs and that type of thing. Can you tell me where in the record I might find that? Yes, sir, I can. So, in response to the motion for, the response to the motion to dismiss, there were several, several exhibits that were attached. And one of them occurred in, it was around October of 13, well, actually, I apologize, September of 13. And this can be found at our appendix at 384. That is where our client, my client, on 9-23 of 2013, actually warned PetroChina that there could be problems if they chose to delay. While these costs, Your Honor, this panel may be related to the subject matter, Calveon doesn't dispute this. It would be ridiculous to dispute it. It's related to the relationship for sure. But these costs are not the purchase order. They're not under the purchase order. They, again, certainly the exchangers were purchased. But beyond that fact, there are no other facts that are needed for Calveon's case-in-chief. And for that reason, I'm cutting into my rebuttal time, I would just respectfully ask this Court to consider reversing the district court below for the reasons that I've discussed here today, and permit this case to be remanded and go forward so that a full forum nonconvenience analysis may be done. All right, Counsel, you can reserve the rest of your time for rebuttal if you wish. Thank you. Let's hear from PetroChina. Mr. Salgado, welcome. The podium has maxed out on height there. Good morning. May it please the Court. I'm Richard Salgado representing PetroChina, the FLE here. And I just wanted to start out right with those shipping costs. I think that's really – there's a couple different bases here I want to talk about. The shipping costs are inextricably part of the contract. The Court asked for where in the contract you see this. And if you actually look at paragraph 5 of the contract, this is on page 202 of the appendix. And I'll quote this, I don't think there's any way to construe the additional charges in shipping as anything other than a change in the shipping cost. What was the appendix page on that? That is 202, 202 of the appendix. unless official change orders have been issued by the buyer. So, again, we have a contract here expressly saying we realize shipping charges might change. If they do, within 10 days of finding out about that change, you have to let us know. And we're not going to pay it unless you follow this process. I think the parties contemplated they would change. It was an estimate, right? Well, I can actually point to that provision too. That's actually – if we go to the general terms and conditions, this is on page 225 of the appendix. And you have article 9.1. And it says here, at the time of shipment. Was it confirmed at the time of shipping? I presume not because I think if there had been a $500,000 difference, there would have been a discussion. I think a budget was confirmed and then subsequently changed. As counsel mentioned, there was four other changes prior to that one. And then when the fifth one came along, they simply didn't follow the protocol set out in the contract. Was a change order ever submitted for these? Your Honor, on that, I am not – My understanding, it was submitted. It was submitted as an invoice. My understanding is it was not done in the 10-day approval protocol as required, but it was submitted as an invoice. And now to point to the scope of this agreement, the scope of this foreign selection clause, first of all, I'd like to say that I respectfully do disagree that it's a narrow foreign selection clause. Looking at the actual terms of it here, It's really two parts grammatically. This purchase order shall be governed by and construed in accordance with the laws of the province of Alberta. And then we have an and. The parties agree to accept and submit to the exclusive jurisdiction of the courts of the province of Alberta. So, Telvion's argument here really is those first three words, this purchase order, necessarily modify the entire paragraph. There's really no way grammatically, though, for that to make sense. If you put ellipses in instead, what you're left with is this purchase order and the parties agree to accept and so forth. You would have to actually rewrite this agreement in order to narrow it in the way that they're proposing. Well, under that interpretation, is there any limit on the type of disputes that Telvion would have to bring in Alberta? I've contemplated that, Your Honor. I think at some point common sense does come into play here. I think there is some rational observed result here. I mean, certainly if there was a tort claim that had nothing to do with this relationship, I think that absolutely would be outside the limits of this agreement. But I certainly don't think this supports a narrow reading of the form selection clause, which is what Telvion is suggesting. Now, the other aspect of it, though, too, is when you read the definitions here, it's very interesting. What are purchase order contemplates? And this, I'll turn the Court to page 224 again of the general terms, 224 of the record, of the appendix. And this is the Article 1.1, which is the definitions on page 224. And it defines purchase order as meaning collectively. The purchase order issued by the company, these terms and conditions, and all other documents attached to or referenced in the foregoing. Now, of course, this document or this contract references invoices. But if we look at documents there, it's capitalized and it's a defined term. What provision were you reading? This is Article 1.1 on page 224. And so it's alphabetical down around the middle of the page. And that is purchase order. And that's where they define what purchase order actually means. And the purchase order includes documents, which is a capitalized term. So if we go back up on the same page, I'm sorry to sort of move all over this page here. But if we stay on page 224 and we go up to documents, where that is a defined term. Documents means those documents, materials, and directions, including drawings and specifications, in whatever form, whether hard copy or electronic, relating to the goods or this purchase order. So there we have that relating to terminology that Council referred earlier to as being so broad. So essentially, this purchase order somewhat, I'll admit it's somewhat circular in its definition, but the purchase order essentially defines itself as including any document that relates to the purchase order. So unless we're going to say the invoices, contemplating shipping charge changes under this purchase order are not part of the purchase order, it would completely throw this whole definition upside down. Now, the other aspect of it, too, that we haven't discussed at all is the reality of what's going on in this case. When Kelvion first filed this case, they filed his breach of contract. That's what this was. And then when Petro China moved to dismiss, or under the Foreign Selection Clause, they immediately amended, dropped the breach of contract claim, and added unjust enrichment and quantum merit, these equitable claims. Fundamentally, and this goes to the heart of the district court's decision on this, there's no possible way to adjudicate those equitable claims without looking at the contract. Because fundamentally, it's Hornbook law here that you cannot have equitable claims if a contract governs. Which, again, they plainly thought it did when they filed their initial complaint here. They only withdrew this to essentially steer wide around that Foreign Selection Clause. It's really games and shit is what this is. And so, again, fundamentally pointing at that, there's no way to adjudicate this without looking in that contract to see if it governs. There's no way to have any relationship to the parties defined to understand if there would be unjust enrichment. You have to necessarily look at this contract. And that contract, even under the narrowest possible reading the counsel has proposed, absolutely has a Foreign Selection Clause controlling saying Alberta. So that's essentially what I have to offer, Your Honors. I'm happy to discuss any further questions if you have them. Thank you, Counsel. Thank you. We have some rebuttal time left for Ms. Marshall. Thank you, Your Honor. I really only have just two points to touch upon after Mr. Delgado spoke here. I, if I've got to apologize, the first is going to the invoice. So he takes us through this avenue of this sort of convoluted definition to get us to documents and then anything that's related to. Well, even if we adopt that, even if this Honorable Court were to adopt that today, we're still not dealing with an invoice under this purchase order. So it still fails. These costs, the invoice that was issued by my client to PetroChina is for these exigent costs that are, again, that are more than freight. It's actually the part that's in question here is not freight. The second. Why wouldn't the natural course, though, be to have submitted a change order for the excess shipping costs under the purchase order? Yes. Yes, Your Honor. That's a very good point, and hindsight is 20-20. There was, because this was mid-transit, there were actually, there wasn't very much time for Calvion to consider what to do, and it was going to be, basically it was on the clock. It was going to incur costs one way or another, and the frost laws were anticipated to last for more than 60 days. So it just made a decision to serve its client, its customer, and got it to the place that it needed to go. And frankly. Your Honor, I'm glad I got to learn about frost law. Right. I didn't know that. Yes, me too. So the frost, I mean, the frost laws and these exigent costs as you describe them, I mean, those are subsumed by the term shipping, aren't they? I mean, they're part of the shipping process. They're not these random things that are out there that weren't anticipated. I mean, you were emailing about that type of thing. Well, certainly, I mean, they're part of that process, but they weren't, it wasn't the kind of shipping that is contemplated by the contract, right? The contract contemplates, okay, we put these things on a truck, we haul them up to Canada, and there you go. We're not contemplating that we need police escorts, that we need, you know, massive cranes to be brought in. They're big. They're very big, very big. Employees to work those things, and it goes on from there. So that would be my answer to that. And quickly, because I have two seconds. Yeah, I know your time's up, but I want to go ahead. You had a second point. Go ahead and make it. Oh, thank you, Your Honor. I just wanted to say it is true that Telvion did bring a breach of contract claim, along with the quantum merit and the unjust enrichment. But, you know, adopting PetroChina's position throughout this entire litigation and pre-litigation talk, they adopted, accepted that these funds, these exigent costs were not under their purchase order. And there's actually a case that was cited by PetroChina, Anselima v. Unistation Group, and it actually states, it recognizes that this choice was not artful pleading, but rather permissible strategy to try a case under Telvion's theory of choice. Thank you, Your Honor. Thank you, Counsel. I think we understand your arguments. Counsel, the case shall be submitted. Counsel are excused. Appreciate it. Thank you.